**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE ESTATE OF TROY WINSLOW, by and through its Administrators, Jessica M. Adams and Tony L. Winslow; JESSICA M. ADAMS, Individually, and TONY L. WINSLOW, Individually<br><br>Plaintiffs,<br><br>v.<br><br>TRISTON G. CHAMPAGNIE, MATTHEW D. FARLEY, CHARDEEZA COLEMAN, BOSTON POLICE DEPARTMENT, CITY OF BOSTON, COMMONWEALTH OF MASSACHUSETTS,<br><br>Defendants. | Civil Action No. 1:26-cv-10564-ADB |

**CHARDEZA COLEMAN'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS**

Boston Police Officer Chardeza Coleman ("Officer Coleman" or "Coleman"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves this Court to dismiss the following counts of the Plaintiff's Complaint; Counts I (negligence), III (wrongful death pursuant to M.G.L. c. 229 § 2), IV (intentional infliction of emotional distress), V (negligent infliction of emotional distress), VI (loss of consortium), VII (§1983 4th Amendment seizure), VIII (§1983 14th Amendment Due Process), and IX (§1983 14th Amendment Equal Protection). The Plaintiffs have failed to plausibly suggest that they are entitled to relief on each of the listed claims.

## I.   RELEVANT FACTUAL ALLEGATIONS[1]

This § 1983 and state-tort lawsuit arises out of a fatal car crash during an alleged police pursuit. At approximately 3:00 AM on January 4, 2024, fifteen-year-old Troy Winslow (Mr. Winslow) and two other young men were passengers in a Hyundai driven by a fourth teenager. Doc. No. 5, Compl. at ¶¶14-17, 19.   Officers Triston Champagnie and Matthew Farley, while operating an unmarked police vehicle, initiated a traffic stop of the Hyundai. Id. at ¶¶18-19, 22. The officers had previously observed that the occupants were wearing balaclavas and believed that the car may have been stolen. Id. at ¶22. The Hyundai initially pulled over as directed by the officers, but after the officers exited their cruiser, it fled the traffic stop. Id. at ¶21.  A high-speed pursuit ensued, with police activating lights and sirens. Id. At ¶24.  Officer Coleman, operating a separate, marked patrol cruiser, heard the radio call and began following the unmarked cruiser. Id. At ¶28.  Shortly thereafter, the Hyundai struck a pole and rolled over several times on Morrisey Boulevard. Id. at ¶30. Mr. Winslow was ejected from the car and died on the scene despite Officer Farley's attempt to administer aid. Id. at ¶¶ 32-33. Two other juveniles died in the same crash. Id. At ¶35.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (1955)). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than

---

[1] Except where otherwise noted, all facts cited in this motion to dismiss are taken from Plaintiff's Complaint. The City makes no admission with respect to these factual allegations, but rather simply contends that these facts fail to give rise to an actionable claim.

conclusions" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678-679. Courts considering motions to dismiss in civil rights actions "should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted). While the First Circuit recognizes the importance of § 1983, it is also "aware of the impact of its misuse" and thus requires a § 1983 claimant to "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." <u>Dewey v. Univ. of N.H.</u>, 694 F.2d 1, 3 (1st. Cir. 1982). For the reasons set forth herein, the Plaintiffs' claims against Officer Coleman fail to accomplish this goal

### III. ARGUMENT

**A. Counts I, III, and V against Officer Coleman fail because negligence actions must be brought directly against the City of Boston.**

Counts I, III, and V assert a variety of negligence claims, each premised on the contention that the individual defendants violated a duty of care.[2] Doc. No. 5, <u>Compl</u>. at ¶¶64-81, 85-88, 93-96. These claims are each barred by the Massachusetts Tort Claims Act ("MTCA"), which provides that the exclusive remedy for injuries "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment" shall be an action against the public employer. <u>M.G.L. c. 258, § 2</u>. Public employers include "the commonwealth and any county, city, town, educational collaborative, or district," as well as "any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof." <u>Id</u>. § 1. The MTCA thus "shields public employees from personal liability

---

[2] Count II alleges negligent training and supervision, and is not directed at Officer Coleman. <u>Compl</u>. at ¶¶ 82-84.

for negligent conduct" performed in the scope of their employment. Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing McNamara v. Honeyman, 406 Mass. 43, 46 (1989)). Here, Officer Coleman was an employee of the Boston Police Department acting within the scope of her duties during the alleged pursuit. Because the Plaintiffs' negligence claims may be asserted only against the City of, Counts I, III, and V must be dismissed as barred by the MTCA.

### B. Count IV, alleging Intentional Infliction of Emotional Distress, fails.

To successfully plead a count for Intentional Infliction of Emotional Distress, a Plaintiff must plead sufficient facts to establish: "that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379, 385 (2014) (internal citations omitted). "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Id. "The standard for making a claim of intentional infliction of emotional distress is very high." Id. 21 "Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " Id.

Here, the Plaintiffs plead that "The Defendants' actions described above were extreme and outrageous, and the Defendants intended to cause the Plaintiffs emotional distress and/or should have known that their actions would cause emotional distress."  However, the only acts alleged

against Officer Coleman are that she followed the unmarked cruiser and ignored a superior officer's order.  Compl. at ¶ 28.  Although Officer Coleman denies any wrongdoing, these two acts, even if true, fail to satisfy the high bar that the alleged conduct be "extreme and outrageous, beyond the bounds of decency, and intolerable in a civilized community."  Polay, *supra.* Count IV, alleging Intentional Infliction of Emotional Distress, must be dismissed.

### C. Counts VII, VIII, and IX fail because the Plaintiff has not alleged any valid Constitutional Violation against Officer Coleman.

1. **Count VII, alleging a §1983 Fourth Amendment violation, fails because Officer Coleman's involvement in the pursuit does not rise to the level of a violation.**

The Fourth Amendment places a high bar to civil liability for a high-speed pursuit, even when the decision to pursue is reckless. Given this demanding standard, the Plaintiffs' claims of a Fourth Amendment deprivation fail in three respects. First, Officer Coleman was not involved in initiating the stop or the chase.  Her involvement began only after the Hyundai had already fled the stop, and she began following the unmarked cruiser containing Officers Champagnie and Farley.  Second, even if Officer Coleman was involved in initiating the chase, it is well established that the high-speed pursuit of the type alleged is not a seizure under the Fourth Amendment; and third, even if the high-speed pursuit was a seizure, no Fourth Amendment violation occurred because, as pleaded, the officers sought to terminate a pursuit that posed dangerous risks to others.

The Plaintiffs' complaint fails to plead a Fourth Amendment seizure violation. "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Scott v. Harris, 550 U.S. 372, 386 (2007). In weighing the reasonableness of the officer's actions, the Supreme Court in Harris underscored that it was the

plaintiff—not the police—who intentionally placed himself and the public in danger by unlawfully engaging in a reckless flight, and held that the police are under no obligation to simply cease a pursuit in an effort to eliminate the potential risk to the public. Id. at 385. To hold otherwise would create the "perverse incentive" that fleeing motorists could escape arrest by driving recklessly, and the Supreme Court recognized that the "Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness." Id. at 385-86.

Here, Plaintiffs' Fourth Amendment claim is facially implausible.  Police officers pursued a fleeing car that ultimately struck a pole on its own on Morrissey Boulevard. A police pursuit absent intentional force to end that pursuit is not a seizure under the Fourth Amendment. Scott, 550 U.S. at 381 ("[A] Fourth Amendment seizure [occurs]…when there is a governmental termination of freedom of movement through means intentionally applied.") (internal citations omitted), see also, Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998) (finding that a police pursuit without actual force is an attempted seizure beyond the scope of the Fourth Amendment) (internal citations omitted), *abrogated on other grounds by* Saucier v. Katz, 533 U.S. 194 (2001).

Even if the pursuing officers *had* applied some force to the Hyundai, which is not alleged in the Complaint, no Fourth Amendment violation occurred because the high-speed pursuit posed a danger to the public. Although the police officers were attempting to initiate a traffic stop, the car fled immediately. Above all, with speeds topping 90 miles per hour the fleeing car "posed a substantial and immediate risk of serious physical injury to others" and "a police officer's attempt to terminate a dangerous high-speed car chase" even by using force like a PIT maneuver "does not violate the Fourth Amendment."  Scott, 550 U.S. at 375, 386, see also, e.g., Bannon v. Godin, 99 F.4th 63, 86, n. 25 (1st Cir. 2024).  Because such behavior – far in excess of what is alleged in the

Complaint – does not constitute a violation, the behavior attributed to Officer Coleman certainly fails to meet the standard.  Count VII must be dismissed.

2. **Count VIII, alleging a § 1983 Fourteenth Amendment Due Process violation, fails because the allegations against Officer Coleman do not rise to the level of a due process violation.**

The Plaintiffs' due process theory is based on their allegations that officers should not have pursued the fleeing vehicle because of the occupants' age.  Compl. at ¶ 112.  As this relates to Officer Coleman, this theory fails on its face because Officer Coleman is never alleged to have been involved in the stop or to have known any details about the occupants of the Hyundai. However, *even if* the Complaint alleged a substantive due process violation against Officer Coleman, the theory that mere involvement in a pursuit is sufficient to plausibly allege a violation has been squarely rejected by the Supreme Court.  See Lewis, 523 U.S. 833. The complaint fails to plausibly suggest conduct "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 846-47, n. 8 (holding that no substantive due process violation occurs, even when a police officer's actions constitute reckless disregard for life during a high-speed pursuit, leading to an officer running over a passenger), see also, e.g., DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "Various formulations have been used to identify conduct sufficiently outrageous to meet that standard, which deliberately was set high to protect the Constitution from demotion to merely 'a font of tort law.'" Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001) (citing Lewis 523 U.S. at 847 n.8, 848). In summary, high-speed chases do not "give rise to liability under the Fourteenth Amendment, redressible…under § 1983" absent an "[ ] intent to harm [the] suspects physically or to worsen their legal plight." Lewis, 523 U.S. at 854. Here, the conduct Plaintiffs rely on to plead a purported violation of the Fourteenth Amendment's substantive due process is the very conduct found lawful in Lewis.

Even before the Supreme Court's decision in Lewis, the First Circuit decided Evans v. Avery, 100 F.3d 1033 (1st Cir. 1996), where suspicious activity led to a police pursuit that resulted in the killing of a ten-year-old girl. 100 F.3d at 1035-36.[3] The Evans Court reasoned that "deliberate indifference to a victim's rights, standing alone, is not a sufficient predicate for a substantive due process claim in a police pursuit case." Evans, 100 F.3d at 1038. Ultimately, the court's "'shock the conscience'…standard that guide[d] [its] decision, and the conduct of [the] officers…when measured against that benchmark [was] manifestly insufficient to support a substantive due process claim." Id. at 1039.

With all this in mind, Plaintiffs' allegations run contrary to the Supreme Court's caution in Lewis—that the Fourteenth Amendment's prohibition against the "…depriv[ation] of life…without due process of law[ ]" U.S. Const. amend. XIV, § 1, should never be reduced to a "font of tort law." DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005) (citing Lewis, 523 U.S. at 848). Thus, measured against Lewis and Evans, the officers' conduct in this case satisfied the Fourteenth Amendment. Put another way, the Due Process Clause "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm, nor does it 'guarantee due care' by government officials." Id.

Even more confusing is the Plaintiffs' conclusory allegations regarding procedural due process. Under the requirements of the Fourteenth Amendment, a plaintiff must plausibly suggest a failure of notice and an opportunity to be heard on the alleged deprivation of life. "In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures." Id. (citing Fuentes v. Shevin, 407 U.S. 67, 80–82 (1972)). "We examine procedural due process questions in two steps: the first asks whether there exists a liberty or

---

[3] The standard in Evans was, in essence, the standard eventually announced in Lewis.

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Harron v. Franklin, 660 F.3d 531, 537 (1st Cir. 2011). The bounds of procedural due process are flatly untouched by and do not comport to the facts alleged in this complaint, which involved a high-speed pursuit through the streets of Boston, initiated by the driver of the Hyundai – not the defendant Officers, and most certainly not by Officer Coleman, who joined the pursuit already in progress. Count VIII must be dismissed.

3. **Count IX, alleging a § 1983 Equal Protection claim, fails because Officer Coleman is never alleged to have seen or been aware of the Plaintiffs' race.**

Count IX of the Plaintiffs' Complaint alleges that "the Defendants' disparate treatment of Plaintiffs based on race, including but not limited to their deadly, racially motivated pursuit of four children over an alleged motor vehicle violation ... has denied Plaintiffs their right to equal protection of law." Doc. No. 5, Compl. at ¶120. It further alleges that "[u]pon opinion and belief, Officers, upon observing four youths of color traveling late at night in an area associated with gang activity, singled out the child occupants. The Officers made bigoted assumptions, based solely on 'hunch,' that these youths were engaged in criminal activity of some kind, and in the hopes of obtaining an arrest or demonstrating a 'tough-on-crime' show of force to a group of juveniles trying to evade law enforcement, decided to aggressively pursue the vehicle." Id. at ¶ 122.

Ignoring the fact that "opinion and belief" is not a sufficient factual basis to survive a motion to dismiss, Officer Coleman is never alleged to have observed the occupants of the vehicle before the stop, is not alleged to have been aware of the Plaintiffs' race, is not alleged to have been involved in the initial traffic stop, and is not alleged to have ever seen the juveniles before her arrival at the scene of the crash. Id. at ¶¶18-25. Officer Coleman did not begin following the unmarked cruiser after the chase was already underway. Id. at ¶28. The Complaint simply does

not plausibly allege that Officer Coleman had any knowledge of Mr. Winslow's race, let alone that she "singled him out" based upon the fact that he is African-American – a characteristic that Officer Coleman and Mr. Winslow share.  Count IX against Officer Coleman must be dismissed.

### D. The Plaintiffs' Loss of Consortium claim fails because loss of companionship must be pursued under the Wrongful Death statute.

Count VI of the Plaintiff's Complaint alleges loss of consortium pursuant to M.G.L. c. 231 § 85X.  Compl. at ¶¶ 97-100.  The Plaintiffs allege that "[d]ue to the intentional acts[4] of the Defendant(s) Jessica Adams and Troy Winslow, biological parents of the minor decedent, have lost all opportunities for companionship with their child Troy."  Id. at ¶ 98.  M.G.L. c. 231 §85X (the "Loss of Consortium statute") states, in its entirety, as follows:

> The parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been **seriously injured** against any person who is legally responsible for causing such injury.

(Emphasis added.)  The plain language of the statute and the complaint are at odds; the Complaint is clear that the Plaintiffs are seeking damages because they "lost all opportunities for companionship" with Mr. Winslow due to his tragic death.  Doc. No. 5, Compl. at ¶ 98.  The statute, conversely, permits a parent to recover

> "only if their child's injuries are of such severity and permanence as to render [him] physically, emotionally, and financially dependent on them and that, as a result, their lives have been significantly restructured and their expectations of enjoying those experiences

---

[4] Because the Plaintiffs rely on the phrase "intentional acts," the loss of consortium claim brought pursuant to M.G.L. c. 231 §85X must be limited to the intentional tort contained in Count IV for Intentional Infliction of Emotional Distress.  To the extent that this claim is intended to apply to the negligent torts contained in Counts I, III, and V, Officer Coleman respectfully requests the opportunity to file a reply brief addressing the interplay of this claim and the Massachusetts Tort Claims Act.

normally shared by parents and children have been seriously impaired."

Biscan v. Town of Wilmington, 721 F. Supp. 3d 127, 150 (D. Mass. 2024) (Gorton, J.), on reconsideration, 771 F. Supp. 3d 26 (D. Mass. 2025) (quoting Reckis v. Johnson & Johnson, 28 N.E.3d 445 (Mass. 2015)). That is, a parent may only recover under the Loss of Consortium statute if the child survives and his injuries are so significant as to "significantly restructure" the plaintiff-parents' lives. See also Leibovich v. Antonellis, 574 N.E.2d 978, 980 (Mass. 1991) (describing that the Loss of Consortium statute was created to remedy the fact that loss of consortium could only be pursued under the Wrongful Death statute).

Even so, the Plaintiffs are not without recourse; they have already brought a claim under M.G.L. c. 229, § 2 (the "Wrongful Death Statute"), which permits an action due to loss of "society, companionship, comfort, guidance, counsel, and advice" when a defendant has caused the death of another person. The Plaintiffs have already brought this claim under Count III for wrongful death, and whatever relief they seek under this count is subsumed by Count III. Count VI must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Officer Chardeza Coleman respectfully requests that this Court dismiss those counts of the Plaintiffs' Complaint alleged against her, and for such other relief and the Court deems just and proper.

Date: April 1, 2026

Respectfully submitted,

**Officer Chardeza Coleman**

By her attorney,

Michael Firestone
Corporation Counsel

*/s/ Adam D. Johnson*
Adam D. Johnson (BBO # 679142)
Edward F. Whitesell, Jr. (BBO # 644331)
Mauricio J. Vaca (BBO#704470)
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4034
adam.johnson@boston.gov
edward.whitesell@boston.gov
mauricio.vaca@boston.gov

**CERTIFICATE OF SERVICE**

I certify that a copy of the above pleading was filed with the ECF System and sent electronically to the registered participants identified on the Notice of Electronic Filing, with paper copies being sent to those indicated as non-registered participants.

*/s/ Adam D. Johnson*
Adam D. Johnson

**7.1 Certification**

I certify that I conferred with counsel for the Plaintiff on March 31, 2026 in an effort to resolve or narrow the issues raised herein. The parties were unable to narrow the issues.

*/s/ Adam D. Johnson*
Adam D. Johnson
